IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

Diane E. Perkins, daughter and next
friend of George H. Perkins,

    Plaintiff,

vs.                                   Case No. 13-2530-JTM

University of Kansas Medical Center,
*et al.*,

    Defendants.

MEMORANDUM AND ORDER

Plaintiff Diane Perkins has brought the present *pro se* action alleging various "HATE CRIMES" against her late father, George Perkins. (Dkt. 1, at 4). Perkins, a resident of Missouri, has sued the University of Kansas Medical Center ("KU Med Center"), the University of Kansas Board of Regents, the University of Kansas Hospital Authority, Kansas University Physicians, Inc, as well as six physicians and two agencies of the State of Missouri. All of the defendants have moved to dismiss the action.

The Complaint alleges that the 91-year-old Mr. Perkins was transferred from a Veterans Administration hospital to KU Med Center on October 12, 2006, suffering from

a subdural hematoma. According to the Complaint, her father was then alert and stable. At KU Med Center, he agreed to "definitive neurological examination and possible intervention."

At some point, George Perkins underwent "not 1 (one) but 2 (two) brain surgeries." *Id.* at 11. However, the Complaint alleges that the KU Med Staff failed to prescribe an MRI which would have found "my father's newly acquired condition ... carotic arteries." Id.

On October 19, 2006, George Perkins suffered a stroke. He was intubated and attached to a breathing device. The medical staff placed Perkins in "soft limb restraints" when he resisted the procedure. The Complaint alleges that "the medical staff chose, against my father's own will, and against the will of my father's family, his children, to issue palliative care order to 'Illegally Euthanize/Kill Him/End His Life.'" *Id.* at 12 (emphasis in Complaint). The Complaint alleges that the KU Med Center staff secretly denied George Perkins of any water "turned into gross mistreatment, a HATE CRIME." Id. at 13. Perkins asks "[h]ow could this [the use of a breathing machine] be, when my father was communicating verbally" after his earlier surgeries. *Id.*

According to Perkins, "*casket reviewal pictures* ... clearly show my father had been physically assaulted" while at KU Med Center. *Id.* at 9 (emphasis by Perkins). She alleges that KU Med Center delivered the body to a funeral home against the wishes of the family. At the family's insistence, the body was returned to the KU Med Center for an autopsy.

Perkins alleges that Dr. Christopher Meredith failed to discover her father's "carotid arteries, which was the proximate cause of the catastrophic injury, stroke that may father

2

suffered." *Id*. at 5. The Complaint states that Dr. Meredith's "actions, inactions and medical orders" demonstrate his "intent to do physical and mental harm to my father." Id.

Next, the Complaint states that Dr. Joshua Anderson, Dr. Norman Martin, and Dr. Sarah Ann Taylor intentionally sought to harm her father through unspecified "actions, inactions and medical orders." *Id.* at 5-7.

Perkins identifies Dr. Katie Dennis as the physician who performed the autopsy on her father, and Dr. Maria Romanas as the attending pathologist. Perkins again refers to unspecified "actions, inactions and medical orders" showing an intent to injure her father. In addition, the Complaint states that Dr. Dennis and Dr.Romanas were "heartless" in failing to properly prepare the body following the autopsy, even though they were "well aware that my father's family intended to have an open casket funeral." *Id*. at 6-7.

Perkins has also sued the the Missouri Department of Health & Human Services, and the Missouri Attorney General Consumer Protection Unit, alleging that these agencies had the duty to investigate "adult abuse, negligence on the part of the funeral home, and other abuses, including abuses of a corpse, and hate crimes, but failed to do so." *Id.* at 7.

In her Complaint, Perkins advances claims against the defendants for violations of 18 U.S.C. § 249, which defines certain hate crimes; 18 U.S.C. § 241, a criminal statute governing conspiracies against civil rights; 18 U.S.C. § 242, a criminal statute applicable to deprivations under color of law; and 28 U.S.C. § 1343, which authorizes district court jurisdiction over civil rights claims advanced under 42 U.S.C. § 1985. In addition, the

Complaint asserts supplemental jurisdiction to hear claims under Missouri Constitution and State of Missouri laws against false imprisonment.

*Conclusions of Law*

The Missouri defendants have moved to dismiss the action on the grounds that the alleged, and purely conclusory, failure to investigate does not implicate any federal right, citing *Garner v. Stephan*, 968 F.2d 19 (D. Kan. 1992). Second, Perkins has failed to alleged any of the elements of a conspiracy under 42 U.S.C. § 1985. *See Busey v. Board of County Com'rs of County of Shawnee*, 277 F.Supp.2d 1095, 1112 (D. Kan. 2003). Third, the claim should be dismissed as it is beyond the statute of limitations. *See Johnson v. Johnson Cnty. Comm'n Bd.*, 925 F.2d 1299, 1301 (10th Cir. 1991) (applying the two-year limitations period of K.S.A. 60-513 to federal § 1983 action). Finally, the defendants argue, the court is without jurisdiction to consider any diversity claims against it, since the plaintiff is also a citizen of Missouri.

The University of Kansas Hospital Authority moved to dismiss the case based on the lack of complete diversity, Eleventh Amendment immunity, a lack of standing, the failure to assert any specific basis for liability against it, and the statute of limitations.

The physician defendants have moved to dismiss because Perkins does not have standing as "next friend" to bring the action, incomplete diversity, and the absence of a private right of action under the criminal statutes, 18 U.S.C. §§ 241, 242, and 249. The defendants also argue that the Complaint wholly fails to give any specific information as

4

to which defendants are alleged to have committed any particular act. Finally, they contend the action is barred by the statute of limitations.

KU Med Center has filed a separate motion to dismiss, also arguing lack of a private right of action under 18 U.S.C. § 249, as well as Eleventh Amendment immunity, and the statute of limitations. Further, it argues that the hospital known as "KU Med Center" is actually under the control of the University of Kansas Hospital Authority, and has been since 1998. K.S.A. 76-3303.

Perkins has not responded at all to the motions filed by the Missouri defendants and by the University of Kansas Hospital Authority. She has responded to the other two motions.

In her response to the motion by KU Med Center, Perkins makes no direct argument in support of any private right of action under 18 U.S.C. § 241, 242, or 249. Rather, she merely quotes the statutes themselves. (Dkt. 46, at 4-6). In apparent reference to the statute of limitations argument, Perkins states:

> I formally **object**, because Wyandotte County, Kansas District Court Judge Daniel A. Duncan, dismissed without prejudice the lawsuit I filed, on October 28, 2008, **under case #08CV2156**, for "**ELDER ABUSE**", against the University of Kansas Medical Center doctor, who at the time was the Vice Chancellor for Clinical Affairs, and Executive Dean.

*Id.* at 6 (emphasis in original).

She also makes reference to alleged investigations by Special Agent Brian Truchon of FBI and the Missouri Attorney General, which "as I understand it … **are still open and under investigation**." *Id.* (emphasis in original). Perkins offers no support for this

5

assertion, and it is in fact contradicted by one of the exhibits attached to her response to the the physicians' motion to dismiss. These collected exhibits, which appear to reflect all of Perkins's correspondence on the subject, indicate that in 2009, Perkins complained to the Missouri State Board of Embalmers about the defunct funeral home involved in the case, which referred the matter to the state Attorney General.

There is no indication that the Missouri Attorney General is indeed conducting an ongoing investigation into the matter. On September 4, 2010, Perkins wrote to Special Agent Truchon, "asking for assistance in the preparation of a civil lawsuit." (Dkt. 47-1, at 43). Far from indicating any ongoing FBI investigation, the letter's recitation of the factual background of the case plainly indicates that Perkins did not believe Truchon would be familiar with any of her allegations. Further, Perkins explicitly referenced the Missouri investigation, and reported that someone from the Attorney General's office "told us that the matter was closed." (*Id.*)

Perkins filed a response which objects to the motion to dismiss by the physician defendants which provides little additional argument. She states that "I did in fact give fair notice of my intent to file this current lawsuit." (Dkt. 47, at 6). She stresses that the defendants are the "RICH/WEALTHY" physicians while she is a simple "wage-earner." (*Id.* at 3). In apparent response to the defendants' standing argument, Perkins states: "How I wish my father "the real party in interest" were still here, but you see, I don't know how, to "Raise Him From The Grave" so he can bring this action himself." (Id. at 7).

The court finds that the defendants' motions to dismiss should be granted. The

6

motions of the Missouri defendants and the University of Kansas Hospital Authority are completely unopposed. Their motions are granted, both for good cause shown and pursuant to D.Kan.R. 7.4. Further, while she has filed a generic response to the Motion to Dismiss of KU Med Center, Perkins has supplied no argument in opposition to that defendants' Eleventh Amendment immunity argument. The defendants' motion is granted as unopposed under Rule 7.4, and for good cause. *See Ellis v. University of Kansas Medical Center*, 163 F.3d 1186, 1196 (10th Cir. 1998) (applying immunity in case involving defendant).

The court finds that Perkins's claims under 18 U.S.C. §§ 241, 242, and 249 should be independently dismissed. These federal statutes authorize criminal prosecution for various acts, they do not authorize a private right of action. *See Figueroa v. Clark*, 810 F.Supp. 613, 615 (E.D. Pa. 1992) (no private cause of action for alleged violations of 18 U.S.C. § 241 and 18 U.S.C. § 242).

The court also finds that the claims against the physician defendants should also be dismissed because of the purely conclusory allegations of the plaintiff, which provide no specific explanation for how each respective defendant violated Mr. Perkins's civil rights. A complaint must "make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claim against him or her, as distinguished from collective allegations." *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008). The Complaint here provides no such specificity, repeatedly referring to the actions of "medical staff" rather than any particular defendant. The only specific

allegations against particular defendants are the contention that Dr. Meredith failed to order an MRI and that Dr. Dennis and Dr. Romanas released the body in an unsuitable condition for viewing. But even these allegations are devoid of any *racial* motive in the supposed misconduct, which is the basis of the plaintiff's prayer for relief. Because the Complaint fails to alert the individual defendants to the nature of the allegations against them, and plaintiff makes no attempt to provide additional specificity in her Response to the defendants' Motion to Dismiss, that motion should be granted.

Next, the court agrees that Diane Perkins does not have standing to bring the present action as the real party in interest. "Under Kansas law, absent an administrator or an executor, an estate lacks the ability to sue or be sued." *Vorhees v. Baltazar*, 283 Kan. 389, 153 P.3d 1227 (2007). Perkins's assertion that she is the "next friend" of her father does not establish that she is the real party in interest to bring this action. *See Morgan v. Potter*, 157 U.S. 195, 198 (1895) (a "next friend, by whom the suit is brought ... is neither technically nor substantially the party, but resembles an attorney, or a guardian ad litem"). Under Kansas law, "[p]ersons who are mere nominal are not real parties are not bound." *Henry v. Missouri, K. & T. Ry.*, 98 Kan. 567, 158 P. 857, 858 (1916). Although Perkins makes reference to the filing of a probate action for her father, there is no contention that Perkins herself is the administrator or executor of the estate. To the contrary, the court takes judicial notice of the pleadings in *In re Perkins*, 07P8-PR00235 (Jackson County, Missouri Circuit Ct.), which establish that the court entered an order denying the issuance of letters for Mr. Perkins's Estate.

Finally, the court finds that the claims advanced here are barred by the two-year statute of limitations. *See Hamilton v. City of Overland Park*, 730 F.2d 613, 614 (10th Cir. 1984). The claims asserted here are premised on the 2006 death of George Perkins. The Complaint was filed on October 15, 2013, nearly seven years after the incident.

While Perkins has made reference to a prior civil action, No. 08CV2156 (Wyandotte County Dist. Ct.), this does not make the present action timely for three reasons. First, the earlier case appears to have been advanced only against Dr. Barbara F. Atkinson, who is not a defendant in the present actions. Generally, a savings statute will not extend the time to sue a different defendant. *See Hebertson v. Bank One*, 995 P.2d 7, 12 (Utah App. 1999). *See also Rogers v. Williams, Larson*, 245 Kan. 290, 777 P.2d 836 (1989) (savings statute inapplicable where plaintiffs in first action as individuals and second action sued as administrators of estate).

Second, there is a substantial basis for concluding that the relevant savings statute, K.S.A. 60-518 has no application because the action against Atkinson was never properly commenced. The statute applies when action is "commenced within due time." Under K.S.A. 60-203, an action "is commenced by filing a petition." Here, it appears that Dr. Atkinson moved to dismiss the action precisely because Perkins had not filed any petition, but rather a "Notice of Motion and Motion" essentially asking that the court file a petition on behalf of George Perkins. The judicial record from the case does not indicate that the court determined a petition was filed; rather the case was apparently dismissed after plaintiff failed to appear for a scheduling conference.

9

Finally, even if K.S.A. 60-518 were applicable, it would only extend the period for filing the action only six months. As the Wyandotte County action was dismissed in December, 2008, the statute of limitations expired in June of 2009.

IT IS ACCORDINGLY ORDERED this 7th day of April, 2014, that the defendants' Motions to Dismiss (Dkt. 17, 28, 33, 38) are hereby granted.

 s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE